**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Greg Acosta, ) | No. 1:08cv-1238-GMS |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Dr. S. Suryadevara, ) | |
| Defendant. ) | |

Plaintiff Greg Acosta brought this civil rights action under 42 U.S.C. § 1983 against Defendant Dr. S. Suryadevara, the former Acting Chief Medical Officer at the California Substance Abuse Treatment Facility and State Prison in Corcoran ("SATF-CSP"). Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 40). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Plaintiff Acosta is an inmate incarcerated at the SATF-CSP in Corcoran, California.[1]

---

[1] Local Rule 260(b) requires that a "party opposing a motion for summary judgment shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial. The opposing party may also file a concise 'Statement of Disputed Fact,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment. If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the

(Doc. 40-3). Since 2000, Plaintiff has been receiving psychiatric treatment, including medications such as Zoloft, Prozac, and Lithium. Around 2005 or 2006, following a 20-day lock-down at the prison, Plaintiff began to experience light sensitivity to his eyes, a condition he attributes to taking Prozac.

On May 30, 2007, Plaintiff filed an Inmate Appeal (CDCR Form 602) requesting a permanent medical "chrono"[2] that would allow him to wear sunglasses at all times. Plaintiff also requested an interview with Dr. Burdick on this issue. On June 13, 2007, Dr. Burdick examined Plaintiff and denied his Appeal at the Informal Level because he believed that the psychiatric medicine prescribed to Plaintiff did not have an effect on his alleged ocular sensitivity to light. Dr. Burdick found that there was no change in Plaintiff's sensitivity even after changing his medication.

On June 25, 2007, Plaintiff filed another Inmate Appeal at the First Formal Level, stating he was dissatisfied with Dr. Burdick's response and requesting to be seen by a specialist. On August 1, 2007, Dr. Burdick again examined Plaintiff. On August 31, 2007, Plaintiff was examined by an optometrist at SATF-CSP who prescribed Plaintiff reading glasses and gave him permission to have his family send him transitional lenses. While Plaintiff initially contacted his family so they could send him the lenses, he subsequently

---

[movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the fact contained in the [movant's] statement." *Beard v. Banks*, 548 U.S. 521, 527 (2006). "A district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment[.]" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotation marks omitted). Despite two separate warning letters which granted Plaintiff extra time to file (Doc. 49, 56), Plaintiff has failed to provide a controverting statement of facts that either disputes Defendant's statement of facts or references specific admissible portions of the record that establish a genuine issue of material fact. Accordingly, the Court must treat Defendant's statement of facts as admitted for purposes of this motion.

[2] Although not defined by either party, a "chrono" appears to be a written record relating to a prisoner's health or other matter, which is placed in the prisoner's file.

- 2 -

decided that he did not want them because others had told him that they do not work well indoors and because he could already wear his sunglasses when outdoors.

On September 10, 2007, in response to Plaintiff's Inmate Appeal at the First Level, Nurse Practitioner Reyes examined Plaintiff and submitted a chrono request to Defendant for Plaintiff to be allowed transitional eyeglasses. Two days later, on September 12, 2007, the Health Care Appeal Coordinator and the Correctional Health Services Administrator II at SATF-CSP issued a First Level Response, partially granting Plaintiff's appeal by allowing him to be interviewed by Dr. Burdick and granting his request for a chrono for transitional glasses. On September 14, 2007, Defendant denied Plaintiff's request for an accommodation chrono to wear transitional glasses. A few days after that, on September 20, 2007, the Health Care Appeal Coordinator and the Correctional Health Services Administrator II issued an Amended First Level Response, again allowing Plaintiff to be interviewed by Dr. Burdick, but this time denying his request to wear sunglasses and to be seen by an opthamologist.

On August 21, 2008, after exhausting his administrative remedies, Plaintiff filed his Complaint in this action pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights as a result of Defendant's deliberate indifference to his medical needs.[3] (Doc. 1). Defendant moves for summary judgment on the ground that Plaintiff's cause of action fails as a matter of law because there is no triable issue of fact against Defendant as she was not deliberately indifferent to Plaintiff's medical needs. Despite several warnings, Plaintiff has failed to file a Response to Defendant's motion.

---

[3] Although Plaintiff's Complaint makes a single isolated reference to a "violation of his 14th Amendment right of equal protection and treatment," the facts alleged do not give rise to an Equal Protection claim where Plaintiff has nowhere alleged that he is being treated differently than similarly situated individuals. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. *See San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972).

- 3 -

**DISCUSSION**

**I.      Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court is mindful that Plaintiff is proceeding *pro se* and is incarcerated. "*Pro se* prison inmates, with limited access to legal materials, occupy a position significantly different from that occupied by litigants represented by counsel." *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.4 (9th Cir. 1986) (citation omitted). Courts have a duty to liberally construe the pleadings of *pro se* litigants, particularly those filed by *pro se* prisoners. *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). *Pro se* litigants are nonetheless bound by "the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), including Rule 56's requirement that a nonmoving party "must present some significant probative evidence tending to support the complaint" to survive summary judgment. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984) (citation and internal quotes omitted).

- 4 -

## II.     Analysis

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a serious medical need and (2) that the defendant's response was deliberately indifferent.  *Id*. Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation.

A serious medical need exists whenever the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez,* 298 F.3d 898 (9th Cir. 2002) (internal citation omitted) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Examples of serious medical needs include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1059–60. Plaintiff alleges that his eyes are sensitive to both artificial and natural light, a condition which creates a burning sensation and causes his eyes to water. (Doc. 1; Doc. 40, Ex. H).  Plaintiff also alleges that as a result of his sensitive eyes, he experiences substantial pain, suffering, and emotional distress. (*Id*.).   Because the Court recognizes that Plaintiff's ocular sensitivity and discomfort is something a reasonable doctor would find worthy of comment, and because it could result in further injury to Plaintiff, the objective component is satisfied.

Defendant asserts that Plaintiff's medical need was not serious. She relies on the fact that Plaintiff continued to complain about light sensitivity even after Dr. Burdick modified the dosage and type of his psychiatric medication, thus causing Dr. Burdick to believe that the medication did not affect Plaintiff's eye condition. While the Court does not dispute Dr. Burdick's conclusion, it is inapposite for purposes of determining whether Plaintiff suffers

from a serious medical need. Additionally, Defendant's implication that Plaintiff must have sustained some sort of permanent injury in order to establish a "serious medical need" is unpersuasive. *See Wood v. Housewright*, 900 F.2d 1332, 1340 (9th Cir. 1990) (noting that any assertion that plaintiff must allege some sort of permanent physical damage is untenable).

The Court next turns to the subjective prong – whether Defendant's response to Plaintiff's serious medical need was deliberately indifferent. *See Jett*, 439 F.3d at 1096. A prison official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate indifference prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or medical need, and (b) harm caused by the indifference. *Jett,* 439 F.3d at 1096. Plaintiff's deliberate indifference claim appears to be based on three basic allegations: 1) Defendant denied him a chrono for transitional lenses, or in the alternative, sunglasses, 2) Defendant failed to refer him to a specialist, and 3) Defendant never directly examined Plaintiff prior to denying his requests.

With respect to the first allegation, Plaintiff asserts that on or about September 2007, Practitioner Reyes recommended a chrono be issued for Plaintiff to be allowed to wear transitional lenses, but that Defendant denied the request. (Doc. 1). Defendant admits that on or about September 14, 2007, she denied Reyes' chrono request for Plaintiff to be allowed to wear transitional lenses after determining that Plaintiff's medical condition did not warrant issuance of a chrono. (Doc. 41-1, ¶ 11; Doc. 40, Ex. D). She explains that she denied the request based on Dr. Burdick's conclusion that the psychiatric medication prescribed to Plaintiff did not have an effect on his eyesight, and also that Dr. Burdick had found that there was no change in Plaintiff's complaint of light sensitivity after he increased Plaintiff's dosage of Prozac. (Doc. 41-1, ¶ 12). Dr. Burdick's determination was based on his experience and on information from the drug manufacturer about the side-effects of Prozac. (Doc. 40, Ex. I, ¶ 8). Notably, after Defendant's denial of his request, Plaintiff decided that he did not want the transitional lenses because he was informed by other inmates that the lenses would not

1  work well indoors. (Doc. 40-3, ¶ 23). In fact, Plaintiff's deposition testimony indicates that
2  he no longer alleges that Defendant did anything wrong by denying him the chrono for
3  transitional lenses. (Doc. 40, Ex. H, 64) (Q: "Okay, So just to be clear, do you still – are you
4  still complaining or alleging that Defendant Dr. Suryadevara did something wrong by not
5  allowing you to get transitional lenses? A: "No. That part, no. You can dismiss that part as
6  far as the claim goes."). Thus, Defendant was not deliberately indifferent by denying Acosta
7  the chrono for transitional lenses.

8  Construing the pleading liberally, it is possible that Plaintiff intended to allege that
9  Defendant's denial of Plaintiff's request for a chrono for transitional lenses was actually a
10 denial of a chrono for sunglasses, although the distinction between the two is not readily
11 apparent to the Court. Defendant has established that on May 30, 2007, Plaintiff filed an
12 Inmate Appeal Form requesting that he be provided with a permanent medical chrono that
13 would allow him to wear sunglasses at all times. (Doc. 40-3, ¶ 13). On June 13, 2007, Dr.
14 Burdick denied Plaintiff's Inmate Appeal at the Informal Level. (*Id.* at ¶ 15). On September
15 20, 2007, the Health Care Appeal Coordinator and Correctional Health Services
16 Administrator II issued an Amended First Level Response, denying Plaintiff's request to
17 wear sunglasses. (*Id.* at ¶ 29). The evidence provided does not suggest that Defendant was
18 involved in the decision to deny Plaintiff a chrono for sunglasses. If anything, the evidence
19 suggests that Dr. Burdick made that decision.

20 However, even assuming that Defendant was involved with the decision to deny
21 Plaintiff a chrono for sunglasses, such a denial would not defeat summary judgment because
22 "a mere 'difference of medical opinion . . .[is] insufficient . . . to establish deliberate
23 indifference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted);
24 *Sanchez v. Vild*, 891 F.2d 240 (9th Cir. 1989) (holding that a difference of medical opinion
25 as to treatment of a prisoner did not amount to deliberate indifference of a prisoner's serious
26 medical needs). To prevail on a claim involving choices between alternative courses of
27 treatment, a prisoner must show that the course of treatment the doctor chose was medically
28

- 7 -

unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff has not met his burden of demonstrating that there exists a genuine issue of material fact as to whether Defendant purposefully denied him a chrono for sunglasses, and that her decision was either medically unacceptable or done in conscious disregard to Plaintiff's health. Even assuming that Defendant did deny Plaintiff a chrono for sunglasses, which Plaintiff has not established, this decision would be within Defendant's discretion. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) ("State prison authorities have wide discretion regarding the nature and extent of medical treatment."). In reaching this conclusion, the Court remains cognizant of Plaintiff's testimony regarding his ability to wear his sunglasses without a chrono while in his cell, during day-room activities, and also outdoors during recreational activities. (Doc. 40, Ex. H, 38). Accordingly, Defendant is entitled to summary judgment based on her alleged denial of Plaintiff's chrono request for sunglasses.

Plaintiff's second allegation – that Defendant failed to refer him to a specialist – also fails to demonstrate deliberate indifference. Plaintiff alleges that on June 13, 2007 he was examined by Dr. Burdick, who recommended that Plaintiff be seen by a "specialist/opthamitrist," but that Defendant rejected that recommendation. (Doc. 1). Defendant has established that on June 25, 2007, Plaintiff filed an Inmate Appeal Form requesting to be seen by an eye specialist. (Doc. 40, Ex. H, 68–69; Ex. D). In response, on or about August 13, 2007, Reyes examined Plaintiff and granted his request to be referred to an opthamologist. (Doc. 40, Ex. J, ¶ 4; Ex. F). However, on September 20, 2007, the Health Care Appeal Coordinator and the Correctional Health Services Administrator II issued an Amended First Level Response, denying Acosta's request to be referred to a specialist because it was not medically indicated at the time. (Doc. 40, Ex. H, 58-60; Ex. D). Defendant was not involved in the decision to deny Plaintiff's request to be seen by an eye specialist. (Doc. 41-1, ¶ 14).

In any event, on August 31, 2007, Plaintiff was examined by the contract optometrist

1 at SATF-CSF, Dr. A. Rummel. (Doc. 40, Ex. H, 32; Ex. F; Ex. J, ¶ 6). During that
2 examination, Plaintiff told the optometrist that he was sensitive to light and the optometrist
3 prescribed him reading glasses and also gave him permission to have his family send him
4 transitional lenses. (Doc. 40, Ex. J, ¶ 6). Plaintiff subsequently decided that he did not want
5 the transitional lenses. Plaintiff testifies that he only considers opthamologists, not
6 optometrists, to be specialists. (Doc. 40, Ex. H, 52). In light of the fact, however, that Dr.
7 Rummel prescribed a treatment for Plaintiff for his eye condition, and that Plaintiff declined
8 to follow it, he cannot complain that the treatment was inadequate. At any rate, Defendant
9 has established that she never denied Plaintiff the opportunity to be seen by a specialist. If
10 anything, that decision was made by Defendant's bosses, the Health Care Appeal
11 Coordinator and Correctional Health Services Administrator II. Moreover, Plaintiff has
12 offered no evidence to either contradict Defendant or to support his own contention that
13 Defendant was deliberately indifferent.

14 Finally, Plaintiff appears to contend that Defendant was deliberately indifferent by
15 deciding to deny Plaintiff's requests for an accommodation chrono and specialist referral
16 without ever directly examining Plaintiff herself. Plaintiff has failed to provide the Court
17 with any evidence suggesting that, in her capacity as Acting Chief Medical Officer,
18 Defendant was required to directly examine patients prior to rendering a decision on an
19 Inmate Appeal, as opposed to merely reviewing the medical documents prepared by other
20 physicians. Plaintiff has not established a genuine issue of material fact as to this allegation.
21 By conclusively finding that Defendant did not purposefully act or fail to respond to Acosta's
22 pain or medical need, the Court finds it unnecessary to discuss the second element of a
23 deliberate indifference finding, namely whether the indifference caused Plaintiff any harm.
24 *Jett*, 439 F.3d at 1096.

## CONCLUSION

26 Even under the liberal pleading rules applicable to *pro se* plaintiffs, Plaintiff's
27 unsupported contentions are not sufficient to surmount summary judgment. Plaintiff has not

raised any issues of material fact evidencing that Defendant chose her course of action "in conscious disregard of an excessive risk to plaintiff's health." *Jackson*, 90 F.3d at 332 (citing *Farmer*, 511 U.S. at 825). As a result, Plaintiff has not met his burden and the action is dismissed.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 40) is **GRANTED**. The Clerk of the Court is directed to terminate this action.

DATED this 22nd day of March, 2011.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge